# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| CRISTINA GILLASPIE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-02207-DCN-MGB |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| RICHARD V. SPENCER, Secretary of the Navy, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

     This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R") recommending that the court grant in part and deny in part defendant Richard V. Spencer's ("the Agency"[1])'s motion to dismiss. For the reasons set forth below, the court adopts in part and rejects in part the R&R and dismisses the amended complaint in its entirety.

## I. BACKGROUND

     Plaintiff Cristina Gillaspie ("Gillaspie"[2]) brings claims against the Agency for violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The R&R ably recites the facts of this case as alleged by the complaint. Beginning in September 2006, Gillaspie was employed by the Agency as an operations research analyst on the Space and Naval Warfare Systems Command ("SPAWAR")[3] Systems

---

[1] Like the R&R, the court refers to the defendant as "the Agency" for purposes of clarity and in keeping with the parties' briefs. See ECF No. 69 at 1 n.1.

[2] Gillaspie is a female Asian-Pacific Islander, has a hearing disability, and is 49 years of age.

[3] SPAWAR has since changed its name to Naval Information Warfare Center.

Center Atlantic team. In 2013, Gillaspie began working under a new supervisor, Ryan Gunst ("Gunst"), whom she alleges engaged in various discriminatory actions directed towards her. In July 2014, Gillaspie was removed as the lead of her team, and in August 2014, Gillaspie filed a grievance against Gunst through the Agency's internal Equal Employment Opportunity ("EEO") complaint process ("2014 EEO Complaint"). In the 2014 EEO Complaint, Gillaspie alleged that she was being subjected to discrimination, workplace harassment, and a hostile work environment. ECF No. 47-5.

In March 2015, Gunst's "deputy and direct report" Brian Ratliff ("Ratliff") allegedly made an unfounded complaint about Gillaspie diverting funds to the company her husband works for. Am. Compl. ¶ 27. Gillaspie explains that she inadvertently failed to list her husband, a government contractor, on her annual financial disclosure form, and that when she realized her mistake, she proactively took the necessary steps to correct it. Gillaspie alleges that her supervisor and the Office of General Counsel were aware of her mistake and that she followed their directions for correcting the form. Ratliff's complaint triggered an investigation by the Naval Criminal Investigative Service ("NCIS") into Gillaspie's actions, and as a result, Gillaspie was removed from any work involving classified information. Gillaspie was reassigned to projects that only involved unclassified information. Gillaspie alleges that Ratliff's complaint, which "was either created by or authorized by Gunst," Am. Compl. ¶ 27, was retaliation for Gillaspie's 2014 EEO Complaint, and that the Office of General Counsel directed the investigation into Gillaspie in an attempt to force her to abandon her 2014 EEO Complaint.

On February 6, 2017, about two years after Ratliff's complaint, Gillaspie was presented with an NCIS Statement of Probable Cause and a proposed suspension of

security access for cause. The "cause" for suspension was listed as: "Investigation revealed that you [Cristina Gillaspie] did not disclose potential financial conflict of interest on your US Office of Government Ethics (OGE) Confidential Financial Disclosure (OGE 450) Forms as you are required to do, and you took official actions on contracts affecting your spouse's [Timothy Gillaspie] financial interest." Id. ¶ 40. On the same day, Gillaspie alleges that six federal officers came to Gillaspie's office, presented her with a search warrant, and arrested her.

On February 21, 2017, SPAWAR's Security Office issued a formal suspension of Gillaspie's accesses, which included all classified and unclassified information as well as all DoD/Navy/SPAWAR networks, thereby forcing Gillaspie into paid administrative leave. Gillaspie's supervisor, Kevin Holcomb ("Holcomb"), then recommended that Gillaspie be suspended indefinitely without pay because the removal of Gillaspie's accesses made it impossible for Gillaspie to fully perform her job. Gillaspie was never criminally charged as a result of the NCIS investigation, but on March 29, 2017, Annie Rideout ("Rideout"), Gillaspie's second-level supervisor, told Gillaspie that she approved Holcomb's proposal and that Gillaspie's indefinite suspension would go into effect on April 22, 2017. In August 2017, Gillaspie filed two more internal EEO Complaints ("2017 EEO Complaints") alleging discrimination and retaliation based on the revocation of her accesses and subsequent suspension, among other things. ECF No. 47-5. The Agency issued its final decision on these complaints in July 2018, finding that the Agency did not discriminate against Gillaspie. Gillaspie's indefinite suspension remains in effect.

Gilliaspie filed her complaint on August 10, 2018.  The Agency filed a motion to dismiss for lack of subject matter jurisdiction.  ECF No. 18.  Once the briefing on the motion was complete, the magistrate judge instructed the parties to submit supplemental briefing to clarify certain issues.  ECF No. 37.  The parties did so, and the magistrate judge held a hearing on April 16, 2019, ECF No. 45.

Before the magistrate judge could issue an R&R, Gillaspie filed a motion to amend her complaint on May 2, 2019.  ECF No. 47.  Gillaspie's amended complaint is based on her 2017 EEO Complaints.  The Agency opposed the motion, but the magistrate judge permitted the amendment, finding that, given the complexity of the facts, the law, and the arguments in this case, Gillaspie's proposed amended complaint was not frivolous or futile.  ECF No. 55.  Gillaspie filed her amended complaint on June 25, 2019.  ECF No. 56.  The Agency filed another motion to dismiss for lack of jurisdiction on July 24, 2019.  ECF No. 61.  Gillaspie responded on August 7, 2019, ECF No. 63, and the Agency replied on August 14, 2019, ECF No. 64.  The magistrate judge issued her R&R on November 20, 2019.  ECF No. 69.  The Agency filed objections to the R&R on December 4, 2019, ECF No. 70, and Gillaspie replied on December 13, 2019, ECF No. 71.  The objections are now ripe for review.

## II.  STANDARD

### A.  R&R Review

The magistrate judge makes only a recommendation to the court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court.  Id. at 270-71. The court may "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

### B.  Motion to Dismiss

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff.  Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

In her amended complaint, Gillaspie identifies the following alleged adverse employment actions that form the basis for her ADA, ADEA, and Title VII claims:

1. On February 21, 2017, [Gillaspie's] security access (including access to all classified information, classified spaces, unclassified controlled spaces, and all DoD/Navy/SPAWAR networks) was suspended by DCO and [Gillaspie] was issued a letter with the subject: Formal Suspension of Access for Cause;

2. On March 29, 2017, S2 notified [Gillaspie] of her decision to indefinitely suspend her, effective April 22, 2017, pending adjudication of her security clearance by the Department of Defense Central Adjudication Facility (DoD CAF);

3. On April 7, 2017, [Gillaspie] was notified by a potential employer that the SPAWAR Security office had recorded a search as a security incident in JPAS, and her "clearances" [access] were removed; and

4. On April 22, 2017, [Gillaspie] was indefinitely suspended.

Am. Compl. ¶ 6. By doing so, Gillaspie narrowed her claims in her amended complaint to challenge the revocation of her accesses, as opposed to her security clearance.[4] The R&R recommended granting the Agency's motion to dismiss to the extent that Gillaspie's claims challenge the substantive decision-making behind the alleged adverse

---

[4] As explained by the R&R, Gillaspie distinguishes "access" for "security clearance" as follows: "Access here involves the allowance of an individual to attend the jobsite in person, or, failing that, to allow an employee to work on unclassified materials from a remote worksite. [Gillaspie] was ready, willing, and able to do both, but was summarily denied the opportunity to do so." ECF No. 63 at 7 n.2. According to Gillaspie, "[t]he removal of unclassified access is an internal decision made by SPAWAR locally, not by any Federal Agency assigned to adjudicate [Gillaspie's] security clearance and with special expertise on the matter that federal courts do not possess." Id. at 2.

employment actions but denying the motion to the extent Gillaspie's claims challenge the procedure employed by the Agency when making those decisions. The R&R explained that Department of Navy v. Egan, 484 U.S. 518 (1998), and subsequent Fourth Circuit cases prevent a court from reviewing security clearance determinations. See ECF No. 69 at 10–11 (collecting cases). The R&R also explained that Gillaspie "attempts to circumvent Egan and its progeny by arguing that her Amended Complaint does not seek review of the Agency's decision to revoke her security clearance, but rather, challenges the denial of her access to the Agency's site and unclassified materials." Id. at 11 (emphasis in original). The magistrate judge was unconvinced by this distinction, finding that the Agency's reasons for denying Gillaspie access to the Agency's site and unclassified materials are closely related to, if not the same as, the reasons for the revocation of her security clearance. As such, the magistrate judge concluded that the court cannot review the substance of the Agency's security access decisions.

The magistrate judge further recommended denying the Agency's motion to dismiss to the extent Gillaspie challenges the procedure used by the Agency to make its decisions. Relying on Jamil v. Sec'y, Dep't of Def., 910 F.2d 1203 (4th Cir. 1990), the R&R explained that the court still possesses the authority to consider Gillaspie's allegations of procedural and administrative violations. The R&R identified the following allegations that, accepting as true and construing in favor of Gillaspie as the magistrate judge was required to do, relate to the Agency's possible procedural violations. First, Gillaspie alleges that "NCIS attempted, at the behest of SPAWAR, to circumvent the normal prosecutorial channels by taking the false allegations [against Gillaspie] to the Department of Justice." Am. Compl. ¶ 42. Gillaspie also alleges that

Rideout "failed to communicate with the business area [Gillaspie] was supporting" prior to recommending indefinite suspension when Gillaspie claims that she could have continued working without a security clearance. Id. ¶ 43. The R&R explained that through these allegations, Gillaspie "suggests that Rideout ignored standard internal procedure" by recommending indefinite suspension without first communicating with Gillaspie's business area. ECF No. 69 at 15. The R&R also pointed out that Gillaspie was permitted to work on unclassified projects while the NCIS investigation occurred, and that Gillaspie suggests that the subsequent revocation of her access to unclassified material is inconsistent with standard practice. Finally, the R&R referred to two affidavits that were filed with the amended complaint, both of which suggest that the procedure that the Agency used to revoke Gillaspie's access was unusual or inconsistent with standard practice.

After reviewing these allegations, the R&R concluded that Gillaspie had alleged facts sufficient to state a claim for the Agency's alleged procedural violations, and that these claims should be resolved at summary judgment after the parties engage in discovery and determine whether the Agency's actions violated any procedure or regulations. The R&R stressed that it "makes no determination as to whether the Agency is in fact obligated—by internal policy or otherwise—to consider alternative, non-sensitive positions for individuals like [Gillaspie] before approving an indefinite suspension" but instead "merely recommends that the Court allow the parties an opportunity to engage in discovery that will more clearly establish whether such

obligations exists and, if so, whether it was violated by the Agency." ECF No. 69 at 15–16 n.10.

The Agency objects to the R&R, arguing that Gillaspie's amended complaint should be dismissed in full for two reasons. First, the Agency contends that Gillaspie's amended complaint does not contain any claim for procedural violations, meaning that the R&R's reasoning for permitting the amended complaint to survive in part is inapplicable here. Second, the Agency argues that to the extent Gillaspie has alleged a claim for procedural violations, that claim has not been administratively exhausted, meaning those claims must be dismissed. The court finds that Gillaspie's amended complaint must be dismissed in full because she has not sufficiently pleaded a claim for procedural violations. Because this finding alone warrants dismissal of the amended complaint, the court declines to address whether any procedural claim is administratively exhausted.

### A. Procedural Claim

The Agency argues that the R&R improperly permits Gillaspie's procedural allegations to proceed to discovery when no procedural claims are pleaded in the amended complaint. The Agency explains that the amended complaint is a "straightforward claim of employment discrimination and reprisal based on age, sex, and alleged disability status under Title VII, the ADA, and the ADEA." ECF No. 70 at 2. The Agency notes that there is no due process claim and that Gillaspie mentioned the possibility of adding a due process claim to her amended complaint at the hearing but failed to do so. See ECF No. 46, Hearing Tr. 32:11–14. Moreover, the Agency explains that the amended complaint does not identify any law, rule, or regulation governing the

Agency that Gillaspie alleges was violated, as required by <u>Jamil</u>, and that the Agency's decision to indefinitely suspend Gillaspsie is a substantive decision, not a procedural one. In response, Gillaspsie argues that discovery is warranted to determine whether the Agency's actions violated any procedures or regulations, and that <u>Jamil</u> is inapposite because it was decided on a motion for summary judgment.

The court begins its discussion with <u>Jamil</u>. In <u>Jamil</u>, the plaintiff alleged that the defendants failed to follow the procedures required by their own regulations when they revoked his security clearance and fired him. 910 F.2d at 1206. The Fourth Circuit explained that courts "still possess[ ] the authority to require an agency . . . to follow its own regulations in making a security clearance determination and in dismissing an employee," but that the plaintiff "failed to point to the rule or the regulation which he alleges has been violated." <u>Id.</u> at 1208. The court concluded that "[w]ithout a more explicit showing from the plaintiff that the defendants violated any statute or any DMA rule or regulation, defendants are entitled to the district court's award of summary judgment as to plaintiff's claim of violation of any procedural requirements." <u>Id.</u> at 1209.

The issue here is one of pleading, namely, whether a plaintiff must specifically plead a claim for procedural violations when it challenges an agency's failure to comply with procedure, and whether a plaintiff must allege which procedures or regulations an agency violated. Unfortunately, <u>Jamil</u> does not provide the answer to either of these questions. First, it is unclear whether the plaintiff in <u>Jamil</u> pleaded a claim for procedural violations. The Fourth Circuit simply states that the plaintiff "filed the complaint in this case under Title VII" without delineating the specific claims in the complaint. <u>Id.</u> at 1205. Next, as Gillaspie points out, <u>Jamil</u> was decided at summary judgment, as opposed

to on a motion to dismiss, meaning that its procedural posture is different than the posture of this case. Therefore, the parties in Jamil presumably had the opportunity to conduct discovery into the agency's policies and procedures, which the R&R recommends permitting here. In sum, Jamil is useful in the sense that it establishes that a plaintiff can challenge an agency's actions based on its failure to comply with procedure, but it does not address the question of how a plaintiff must do so to survive a motion to dismiss.

Unfortunately, there appears to be very little case law that considers these pleading questions. A district court case within the Fourth Circuit that relies on Jamil indicates that Jamil's application hinges on a separately pleaded procedural claim and that the plaintiff must allege in the complaint which procedures were violated in order to survive a motion to dismiss. In Nickelson v. United States, the plaintiff alleged that the Defense Department of Hearings and Appeal's ("DOHA") director's refusal to forward the plaintiff's request to reconsider the denial of his security clearance to the Deputy General Counsel of the Department of Defense was arbitrary, capricious, and an abuse of discretion. 284 F. Supp. 2d 387, 391 (E.D. Va. 2003). As such, the plaintiff brought a claim alleging that DOHA failed to abide by its appropriate procedures. The court noted that it did have the authority to require an agency to follow its own rules, relying on Jamil, but concluded that the plaintiff's complaint failed to state a claim because it did not allege any rule or regulation that had been violated. Id. This suggests that a plaintiff must plead a specific cause of action for procedural violations and that to withstand a motion to dismiss, the plaintiff must identify the specific rule or regulation that has allegedly been violated. Moreover, cases outside of the Fourth Circuit confirm that in order to allege procedural violations, the plaintiff must bring a cause of action related to

those allegations.  See Duane v. U.S. Dep't of Def., 275 F.3d 988, 990 (10th Cir. 2002)

(plaintiff brought claim that the Department of Defense violated its own regulations by

revoking his clearance on the basis of charges not provided to him prior to his

administrative hearing); Stehney v. Perry, 101 F.3d 925, 929 (3d Cir. 1996) (Count 1 of

the plaintiff's complaint alleged that "NSA failed to follow its binding agency regulations

during the security clearance revocation process"); Carpenter v. Dep't of Energy, 25 F.3d

1047, 1994 WL 201872, at *1–2 (6th Cir. 1994) (plaintiff brought claim that Department

of Energy violated its regulations under the Administrative Procedure Act, but district

court properly dismissed the claim because the plaintiff failed to sufficiently allege any

violation of a regulation).

    In light of these cases and basic pleading requirements, the court finds that in

order for Gillaspie to assert a claim for procedural violations, she must bring a cause of

action for procedural violations and specifically allege which procedures and/or

regulations the Agency violated.  Beginning with the cause of action requirement, the

necessity of separately pleading a cause of action to address Gillaspie's procedural claims

becomes apparent when considering the elements of the causes of action that Gillaspie

has pleaded: Title VII discrimination and retaliation, ADA discrimination and retaliation,

and ADEA discrimination and retaliation.

    The elements of a Title VII discrimination claim are: "1) membership in a

protected class; (2) satisfactory job performance; (3) adverse employment action; and (4)

different treatment from similarly situated employees outside the protected class."

Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub

nom. Coleman v. Court of Appeals of Maryland, 566 U.S. 30 (2012).  "If the plaintiff

presents a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action, even though the burden of persuasion remains with the plaintiff." Rayyan v. Virginia Dep't of Transportation, 719 F. App'x 198, 204 (4th Cir. 2018). "If the employer meets its burden, the burden shifts back to the plaintiff to prove by a preponderance that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Id. Similarly, the elements of a prima facie Title VII retaliation case are (1) engagement in a protected activity; (2) adverse action against the plaintiff; and (3) a causal link between the protected activity and the adverse action. Strothers v. City of Laurel, Md., 895 F.3d 317, 327 (4th Cir. 2018). Like in a discrimination claim, if a plaintiff proves these three elements, then the burden shifts to the defendant employer "to articulate a legitimate, non-retaliatory reason for the adverse employment action." Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir. 2002). If the defendant does so, the burden then shifts back to the plaintiff to "demonstrate that the employer's asserted reason is simply a pretext for retaliation." Id. Whether the Agency violated any procedure when it revoked Gillaspies's accesses and indefinitely suspended her has no bearing on these elements. The only element to which a procedural violation could generally relate is whether the Agency engaged in adverse employment action. However, an adverse employment action is simply "a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted). Whether the Agency violated procedure in taking that adverse employment action is irrelevant; all that Gillaspie would need to prove is that the Agency took the action. Moreover, if

Gillaspie makes a prima facie case for discrimination and/or retaliation, the burden then shifts to the Agency to articulate a legitimate reason for its adverse employment action. To do so, the Agency would be required to articulate the substantive reason for the action, which the court does not have jurisdiction to consider. The procedures employed by the Agency in taking the action that it did simply has no bearing on the elements of these causes of action.

Similarly, the elements of ADA claims are unrelated to procedural violations. "To establish a claim for disability discrimination under the ADA, a plaintiff must prove "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir. 2015). The same burden-shifting framework articulated above applies: if the plaintiff proves her prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, and then the burden shifts back to the plaintiff to show that the articulated reason is pretextual. Id. at 575–76. The court fails to see how any procedural violations would fit into the elements of this claim. Again, the procedural violations could relate to the adverse action, but as applied here, the adverse actions are the revocation of Gillaspie's accesses and Gillaspie's indefinite suspension, and the process behind those actions is irrelevant to the fact that the actions took place. Moreover, once the burden shifts to the Agency, the Agency's substantive decision-making comes into play again. The same is

true for a retaliation claim under the ADA, which matches the elements of a Title VII retaliation claim.

This also applies to the elements of an ADEA claim. To establish an ADEA claim, the plaintiff must show that he "(1) was a member of a protected class, i.e., age 40 or older, (2) suffered an adverse employment action, (3) was meeting his employer's expectations at the time of the adverse action, and (4) was replaced by or treated less favorably than someone outside the protected class or someone substantially younger." Sullivan v. Perdue Farms, Inc., 133 F. Supp. 3d 828, 837 (E.D. Va. 2015). The same burden-shifting framework applies, and the same elements for retaliation apply. For the same reasons discussed above, procedural violations have no bearings on these elements.

In sum, Gillaspie simply cannot obtain relief for any alleged procedural violations under the three causes of action that she has pleaded because those procedural violations have no relation to the elements of the claims. Instead, to obtain relief, Gillaspie must plead a cause of action for procedural violations. It appears that she contemplated doing so at the hearing before the magistrate judge, but inexplicably, she did not include such a claim in her amended complaint.

In addition, Gillaspie did not specifically allege that the Agency violated a procedure or regulation, nor does she point to any procedure or regulation that was allegedly violated. The court understands the R&R's rightful adherence to construing all inferences in favor of Gillaspie, and the court agrees that several of Gillaspie's factual allegations could be construed as alleging that the Agency violated procedures. But more is needed for these allegations to proceed to discovery. There must first be a baseline

allegation that identifies or describes the procedure or regulation that the Agency allegedly violated.

To the extent that Gillaspie may argue that discovery is necessary to learn what procedures and regulations govern the Agency, the court is convinced that sufficiently alleging which regulation or procedure was violated can be done without the benefit of discovery. Regulations that govern the Agency are publicly available in the Code of Federal Regulations. The court acknowledges that it is possible that the Agency's procedures may have not been available to Gillaspie at the time that she filed her amended complaint and that discovery could allow her the opportunity to obtain a copy of those procedures.[5] However, Gillaspie's lack of access to those procedures does not negate the need for Gillaspie to allege the basis of the procedure and that the Agency violated its own procedures. For example, Gillaspie alleges that she was indefinitely suspended without pay "despite [Gillaspie] identifying two different personnel to SPAWAR Leadership who would have been willing to fund her continued employment while allowing her to work from her home or in an unclassified area of SPAWAR." Am. Compl. ¶ 45. However, Gillaspie does not allege that the Agency's decision to suspend her despite this identification contravenes an Agency policy. Gillaspie must have some basis for alleging that it was wrong from the Agency to act in this manner, but Gillaspie fails to identify that basis. Moreover, if Gillaspie is unsure of whether such a policy does

---

[5] The court notes that the one procedure mentioned by Gillaspie, SECNAVIST 12752.1A, is publicly available on the Internet.

actually exist, she is certainly free to allege that one exists based upon information and belief, as is commonly alleged in complaints.

In a similar vein, while the affidavits attached to Gillaspie's amended complaint suggest that the Agency's actions were unusual or unprecedented, neither affiant identifies any procedure or regulation that the Agency violated in so acting. Gillaspie does cite to one specific procedure in her amended complaint, SECNAVIST 12752.1A; however, she does not allege that the Agency violated that procedure. See Am. Compl. ¶ 43.

The court certainly understands that the standard of review is lenient at this early stage of litigation. However, that leniency has a limit. The court cannot strain to interpret factual allegations that generally allege procedural violations as a cause of action alleging that the Agency violated its specific procedures and regulations. Accepting Gillaspie's allegations as true, she simply has not pleaded a claim that would entitle her to relief nor has she alleged procedural violations with sufficient specificity. Therefore, Gillaspie's amended complaint must be dismissed in its entirety.[6]

---

[6] Because the court dismisses the complaint for Gillaspie's failure to properly plead a procedural violation, the court declines to consider whether Gillaspie's claims are administratively exhausted.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS IN PART AND REJECTS IN PART** the R&R and dismisses Gillaspie's amended complaint in its entirety.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 18, 2020**
**Charleston, South Carolina**